IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TOMO AZUMA et al.,

                Plaintiffs,

              v.

LeMOND COMPANIES, LLC,

                Defendant.

Civil Action No. 21-1627-GBW

---

Thomas A. Uebler, Kathleen Ann Murphy, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware

      *Counsel for Plaintiffs*

Susan W. Waesco, Miranda N. Gilbert, MORRIS NICHOLS ARSHT AND TUNNELL LLP, Wilmington, Delaware; R. Andrew Hutchinson, BAKER DONELSON, Johnson City, Tennessee

      *Counsel for Defendant*

**MEMORANDUM OPINION**

September 16, 2022
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiffs Tomo Azuma, Darren Coote, Mark Greenberg, William Morachnick, and Ali

Azhar seek by way of their Complaint (D.I. 1) to recover funds that they loaned to Defendant

LeMond Companies, LLC (LMC).  Pending before the Court is LMC's motion to dismiss for

lack of subject matter jurisdiction (D.I. 5).  LMC argues that Plaintiff William Morachnick is a

member of LMC; that, therefore, both LMC and Plaintiffs are residents of Nevada; and that,

because of this shared residency, the Court lacks diversity jurisdiction.  D.I. 5 at 2.  Plaintiffs

deny that Morachnick is a member of LMC.  D.I. 9 at 2.  The motion is fully briefed, and no

hearing is necessary.  The Court finds that Plaintiffs failed to meet their burden of proof to show

complete diversity and will dismiss this action without prejudice.

## I.    BACKGROUND

According to Plaintiffs' allegations, LMC "is a start-up company specializing in the

design and manufacture of carbon fiber products across multiple industries."  D.I. 1 ¶ 2.  Gregory

J. LeMond is one of LMC's directors and its majority owner.  D.I. 1 ¶ 2.  Plaintiffs lent money to

LMC between December 16, 2017 and January 23, 2018, and Plaintiffs allege that LMC has

failed to repay them.  D.I. 1 ¶¶ 3–6, 9–13.  Plaintiffs contend that "LeMond has treated

[Plaintiff]s' investments as a personal fund to support the lifestyles of his children and extended

family" and that LMC has improperly sought to delay repayment.  D.I. 1 ¶¶ 6–8.

Morachnick served as CEO of LMC from February 28, 2018 through July 30, 2018.  D.I.

9 at 3–4; D.I. 9-2 ¶¶ 3, 9.  The owners of LMC, a limited liability company (LLC), are

"members" with "units"; by comparison, a corporation has "shareholders" that own "shares" of

the company.  *See* 6 Del. Code § 18-503 ("The profits and losses of a limited liability company

shall be allocated among the members, and among classes or groups of members, in the manner

1

provided in a limited liability company agreement."). Morachnick's employment agreement, which he executed on February 28, 2018, awarded Morachnick 0.5 percent of all "Class A" ownership "units" of LMC, and it provided that his units would "immediately vest upon the execution of this Agreement by [Morachnick] and [LMC] . . . ." D.I. 9-4 at § 4.9. LMC executed the agreement on March 7, 2018. D.I. 9-4. However, the agreement further provides that, "[n]otwithstanding the above, [LMC] shall not grant any membership units of [LMC] to [Morachnick] unless [he] has signed a deed stipulating that [he] will be bound by the terms of [the Fourth Amended and Restated Operating Agreement of LMC (the "Fourth Operating Agreement")]." D.I. 9-4 at 6. The parties agree that Morachnick never signed such a deed. D.I. 9 at 4; D.I. 10 at 5–6. They disagree as to whether Morachnick became a member of LMC.

The parties submitted further evidence of their course of dealing. When LMC accepted Morachnick's resignation, LeMond agreed that LMC would "provide an updated [LMC] Operating Agreement dated as of the date of [Morachnick's] employment agreement . . . showing [Morachnick's] fully vested .5% equity holding effective as of the effective date of [Morachnick's] employment agreement." D.I. 9-11. Morachnick was familiar with the Fourth Operating Agreement, but that agreement does not list Morachnick as an LMC member. D.I. 9-2 ¶¶ 7–12; D.I. 9-5, Ex. A. Morachnick declares that LMC never provided him with its Fifth Amended and Restated Operating Agreement (the "Fifth Operating Agreement"), which does list Morachnick as a member, prior to this litigation. D.I. 9-2 ¶¶ 10–12; D.I. 9-6, Ex. A. Morachnick also declares that he has "never received any income or other financial benefit or recognized loss from [LMC] since resigning as CEO" and that LMC "has never provided [him] with notice of member meetings or member votes since [he] left [LMC]." D.I. 9-2 ¶¶ 16–17. LMC does not appear to dispute that it never notified Morachnick about member votes.

2

The parties dispute whether Morachnick received financial information and tax documents to which he was entitled as a member of LMC.  Morachnick declares that he has "repeatedly asked [LMC] for information regarding [its] financial condition" and that Dean Hendrickson—LMC's current CEO—said "the information [Morachnick] sought is confidential business information that could not be shared with [him]." D.I. 9-2 ¶ 20.  Hendrickson declares that Morachnick "[g]enerally" sought such information "in his capacity as a representative of a group of noteholders [who loaned money to LMC], not [in] his capacity as a Member of [LMC]." D.I. 11 ¶¶ 3–4.  An email dated June 8, 2021, shows that LMC's chief financial officer provided certain quarterly updates to Morachnick as a convertible noteholder. D.I. 9-7.  Further, Morachnick says that LMC did not provide him with Form K-1s—tax documents that LLC members receive—for 2018–2020 until this litigation began. D.I. 9-2 ¶ 15.  Hendrickson's second declaration attests that LMC "has filed Schedule K-1's with the Internal Revenue Service showing Morachnick as a Member of [LMC]." D.I. 11 ¶ 5.  LMC represents that it sent Morachnick the tax forms, D.I. 10 at 9, and, in an email dated May 19, 2020, Morachnick's wife asked for additional information from LMC about Morachnick's 2018 health insurance coverage since he was not "going to receive the [LMC] K-1 for 2018 until September . . . ." D.I. 11-1.

Pending now is LMC's motion to dismiss for lack of subject matter jurisdiction. D.I. 5. Plaintiffs allege that they "are citizens of Japan, the United Kingdom, New York, Nevada, and California"; that LMC is organized under Delaware law with members that are citizens of Tennessee only; and that, therefore, the parties are completely diverse, and the Court has subject matter jurisdiction. D.I. 1 ¶¶ 15–16. But LMC argues that Morachnick is a member of LMC; that LMC and Morachnick are both citizens of Nevada; and that, therefore, the Court lacks complete diversity necessary for subject matter jurisdiction to hear this case. D.I. 5 ¶ 2.

3

## II.     LEGAL STANDARDS

Once a court's jurisdiction is challenged, it must presume that it lacks jurisdiction unless the party asserting that jurisdiction exists can prove otherwise. *G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022). "'Under [Rule] 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.'" *Shibles v. Bank of Am., N.A.*, 730 F. App'x 103, 105 (3d Cir. 2018) (citation omitted) (alteration in original). A motion to dismiss under Rule 12(b)(1) may be a "facial" attack, in which defendants argue that the allegations in the complaint are insufficient to invoke federal jurisdiction, or a "factual" attack, in which defendants question the asserted facts underlying federal court jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). In a factual attack, as here, the court may consider any evidence that the parties submit if it is relevant to the court's jurisdiction. *Id.* In such cases, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891).

Federal district courts have jurisdiction to hear claims brought under state law when "the matter in controversy exceeds the sum or value of $75,000" and all plaintiffs are citizens of different states than all defendants. 28 U.S.C. § 1332(a); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). An LLC has the citizenship of each of its members. *Id.* at 105.

## III.     DISCUSSION

The parties agree that, if Morachnick were not a member of LMC, Plaintiffs and LMC would be entirely diverse.[1]   D.I. 5 ¶ 5; D.I. 9 at 8.   Plaintiffs allege and LMC does not contest

---

[1] Geoff LeMond was a member of LMC as of September 4, 2018, D.I. 9-6. Ex. A, and the Complaint was filed on November 18, 2021, D.I. 1.   Geoff LeMond's LinkedIn page explains

that the amount in controversy exceeds $75,000. D.I. 1 ¶ 15. The only issue is if Morachnick

was, when the Complaint was filed, a member of LMC. The Court finds that Plaintiffs failed to

meet their burden of proof to show that Morachnick was not a member of LMC.

Plaintiffs argue that (1) Morachnick never completed the "formalities" required to make

him a member of LMC because he did not sign the required "deed" and that (2) LMC's failure to

treat Morachnick as a member "offers objective proof that [] Morachnick is not a member of

[LMC]." D.I. 9 at 8, 14. LMC argues that (1) Morachnick's employment agreement was

sufficient, alone, to make Morachnick a member of LMC; that (2) LMC waived the "deed"

requirement; and that (3) the course of dealing between Morachnick and LMC is "irrelevant" and

could not have ousted Morachnick as a member without consent. D.I. 10 at 2–3, 7.

## A. Was Morachnick a Member of LMC Even if LMC Never Waived the Deed Requirement?

LMC first argues that, even if the "deed" requirement applied, Morachnick would still be

a member of LMC. Once Morachnick signed his employment agreement, LMC asserts that he

was "admitted as a Member of [LMC] and receive[d] the benefits associated with that

membership." D.I. 10 at 2. Indeed, Morachnick's employment agreement provides that 0.5

percent "of fully diluted Class A units of [LMC]" "will immediately vest upon the execution of

this [employment agreement] . . . ." D.I. 9-4 § 4.9. But that same section states that LMC would

only grant the "membership units" if "[Morachnick] has signed a deed stipulating that

_____

that he was a "Crypto Industry Consultant" in the "San Francisco Bay Area" from March to
May, 2021 and that he remains a "San Francisco Bay Area" resident. *Geoffrey LeMond*,
LinkedIn (Accessed Sept. 7, 2022), https://www.linkedin.com/in/geoffrey-lemond. "Plaintiff Ali
Azhar is a resident of California . . . ." D.I. 1 ¶ 13. It is unclear to the Court whether, at the time
the Complaint was filed, either Azhar or Geoff LeMond were citizens of California. If both were
California citizens, that fact also would destroy diversity jurisdiction because the LLC would be
a citizen of California and Plaintiffs would include a California citizen.

[Morachnick] will be bound by the terms of the [Fourth Operating Agreement]."  D.I. 9-4 § 4.9.
The parties agree that Morachnick never signed such a deed.  D.I. 9 at 4; D.I. 10 at 5–6.

 The parties both apply Delaware law to interpretation of the employment agreement and
the LLC operating agreements.  D.I. 9 at 9–10; D.I. 10 at 3–4, 8.  "'When a contract is clear and
unambiguous, the court will give effect to the plain meaning of the contract's terms and
provisions.'"  *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208
(Del. 2021) (citation omitted).  Here, the employment agreement did not allow LMC to grant
"membership units" unless Morachnick agreed to the terms of the LLC operating agreement,
"[n]otwithstanding" that the shares would vest "immediately."  The parties' evidence as to
whether LMC "confirmed" Morachnick's membership, D.I. 10 at 2; D.I. 9-2 ¶ 12, and whether
LMC treated Morachnick as a member, D.I. 9-2 ¶ 17, sheds no light on whether the deed
requirement, if applicable, would have blocked Morachnick's membership.  Plaintiffs have thus
shown that, unless LMC waived the "deed" requirement, Morachnick was never a member.

## B. Whether LMC Waived the "Deed" Requirement

 However, the Court finds that Plaintiffs have failed to meet their burden of proof to show
that LMC never waived the deed requirement.  While parties may waive contractual
requirements, "Delaware's standard for proving waiver is 'quite exacting.'"  *In re Coinmint,
LLC*, 261 A.3d 867, 893 (Del. Ch. 2021) (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus.,
Inc.*, 871 A.2d 428, 445 (Del. 2005)).  Waiver must be shown by clear and convincing evidence,
*see Eureka VIII LLC v. Niagara Falls Holdings LLC*, 899 A.2d 95, 109–10 & n.27 (Del. Ch.
2006) (citing *AeroGlobal Capital Mgmt.*, 871 A.2d at 444), and "implies knowledge of all
material facts and an intent to waive, together with a willingness to refrain from enforcing those
contractual rights.  The facts relied upon to prove waiver must be unequivocal."  *AeroGlobal*

*Cap. Mgmt.*, 871 A.2d at 444 (citations omitted). "A party asserting waiver must demonstrate that (1) there is a requirement or condition to be waived; (2) the waiving party knew of the requirement or condition; and (3) the waiving party intended to waive that requirement or condition." *Coinmint*, 261 A.3d at 893 (citation omitted). Parties may waive contract provisions by conduct even if the agreement prohibits waiver except in writing. *See CPC Mikawaya Holdings, LLC v. MyMo Intermediate, Inc.*, 2022 WL 2348080, at *13 (Del. Ch. June 29, 2022).

Two facts complicate the typical waiver analysis here. While LMC must show waiver, *Coinmint*, 261 A.3d at 893, Plaintiffs have the burden of proof that the Court has subject matter jurisdiction, *Davis*, 824 F.3d at 346. In a typical waiver case, a plaintiff claims the defendant waived its protection. *See* 13 Williston on Contracts § 39:15 (4th ed., 2021) (explaining that waiver "prevent[s] the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then . . . demanding compliance"); *see also Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 530 n.30 (Del. 2011) (citing *Williston on Contracts* in a discussion of waiver law). However, here, LMC asserts that it waived its own protection. Thus, Plaintiffs' burden is to prove that LMC, in turn, cannot not show by clear and convincing evidence that it waived the "deed" requirement.[2] Plaintiffs are unable to meet that burden for several reasons.

---

[2] To add another complication, "[t]he question of whether the conduct of the parties causes a waiver of contract provisions . . . is typically a question of fact for the jury." 13 Williston on Contracts § 39:23 (4th ed., 2021); *see also AeroGlobal Cap. Mgmt*, 871 A.2d at 445–46 (holding summary judgment was inappropriate where a "material dispute of fact" remained as to whether waiver occurred). But the Court must decide whether waiver occurred without the benefit of a full trial, since the parties do not argue that jurisdictional and merits questions are "intertwined." *Mortensen*, 549 F.2d at 897 (denying pretrial consideration of jurisdiction because it was "intertwined" with the merits in a Sherman Act case).

First, LMC can show that there was a requirement to be waived and that it knew about that requirement. Morachnick's employment agreement does not allow LMC to "grant any membership units . . . to [Morachnick] unless [he]" agrees to the terms of the Fourth Operating Agreement, D.I. 9-4 § 4.9, and Morachnick never agreed to its terms, D.I. 9 at 4; D.I. 10 at 5–6. Morachnick's employment agreement only permitted waivers in writing. D.I. 9-4 § 10.2. The Fourth Operating Agreement provided that "additional Members may be admitted to [LMC] . . . upon such terms and conditions . . . as are approved by the Board" and named three Board members. D.I. 9-5 §§ 3.2.1, 4.3. All three Board members adopted Morachnick's employment contract on March 7, 2018. D.I. 9-4 at 2. Thus, LMC knew of the requirements of Morachnick's employment agreement with respect to both the Fourth Operating Agreement and the grant of membership units, which had to be waived.

Second, LMC can show its intent to waive the deed requirement by its conduct in (1) providing formal notice to Morachnick upon his termination from LMC that he (Morachnick) was a member of LMC, *see* D.I. 9-10; D.I. 9-11, and (2) filing a Schedule K-1 with the Internal Revenue Service (IRS) that listed Morachnick as a member of LMC, D.I. 11 ¶ 5.

A "partnership uses Schedule K-1 to report [a partner's] share of the partnership's income, deductions, credits, etc." Internal Revenue Serv., *2021 Partner's Instructions for Schedule K-1 (Form 1065)*, at 1, Dept. of Treasury (Jan. 10, 2022), https://www.irs.gov/pub/irs-pdf/i1065sk1.pdf. A partner may not need to file a copy in his or her own tax return because "[t]he partnership files a copy of Schedule K-1 (Form 1065) with the IRS." *Id.*

Although Morachnick declares that LMC failed to provide him with evidence of his membership in LMC until this litigation, D.I. 9-2 ¶ 12, he does not dispute that he received formal notice from LMC upon his termination, which should have alerted him to his membership

8

in LMC, *see* D.I. 9-10; D.I. 9-11.  Moreover, Nikki Morachnick, Morachnick's wife, D.I. 11 ¶ 6, acknowledged that Morachnick would receive a "K-1 for 2018" in September of 2019, D.I. 11-1; D.I. 9-9 (submission from Plaintiffs that demonstrates earlier knowledge of Nikki Morachnick's email).  In fact, Morachnick's wife's email casts doubt upon Morachnick's declaration that he never received a Schedule K-1 from LMC for 2018, 2019, and 2020.  D.I. 9-2 ¶ 15.

On the other hand, Plaintiffs attempt to offer evidence to show that LMC never provided Morachnick with (i) confidential financial information, D.I. 9-2 ¶¶ 18–20; D.I. 9-6 § 4.5.1 ("Each [LMC] Member will be entitled to inspect or copy the books and records of [LMC] . . . ."); (ii) notice of LMC member meetings, D.I. 9-2 ¶ 17 ("[LMC] has never provided me with notice of member meetings or member votes since I left [LMC]."); D.I. 9-6 §§ 4.2.1 (providing, by implication, that Class A unitholders like Morachnick have a right to notice of member meetings); or (iii) "any income" or "recognized loss" from LMC, D.I. 9-2 ¶ 16.  However, LMC's current CEO, Dean Hendrickson, swears that Morachnick did not properly request confidential financial information of LMC as a member of LMC.  D.I. 11 ¶ 4.  Rather, Morachnick requested the confidential financial information of LMC "in his capacity as a representative of a group of noteholders," and not "in his capacity as a [m]ember of [LMC]." D.I. 11 ¶ 4.

Thus, after considering the record, the Court finds strong evidence that LMC intended to waive the deed requirement and is not dissuaded by Plaintiffs' purported countervailing evidence.  The Court finds particularly compelling LMC's representation to the IRS that Morachnick was a member of LMC.  D.I. 11 ¶ 5.  Therefore, the Court finds that LMC can satisfy Delaware's standard for waiver with respect to the deed requirement.

\*        \*        \*

In summary, Plaintiffs have the burden of proof to show jurisdiction, and Plaintiffs have failed to meet that burden.  LMC offered evidence that Morachnick was a member of LMC at the time this action was filed.  D.I. 6 ¶ 5.  Plaintiffs acknowledged that Morachnick became an LMC member "if the terms of [his] Employment Agreement were satisfied."  D.I. 9 at 10.  Morachnick's employment agreement granted Morachnick shares "immediately" "upon [its] execution . . . ."  D.I. 9-4 at § 4.9.  Morachnick failed to agree to the Fourth Operating Agreement, as his employment agreement required, D.I. 9-4 at § 4.9, but LMC offered unequivocal facts to show that LMC waived that requirement.  Thus, Plaintiffs have not met their burden to refute that Morachnick was a member of LMC at the time this action was filed.  As such, Plaintiffs, one of whom is Morachnick, D.I. 1 ¶ 12, have failed show that they are completely diverse from LMC, which has the citizenship of its members, *Lincoln Ben. Life*, 800 F.3d at 105.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant LMC's motion to dismiss for lack of subject matter jurisdiction without prejudice.  *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) (finding that the "disposition" of "a case, over which the court lacks subject matter jurisdiction, . . . will, however, be without prejudice" (citations omitted)); *see Patel v. Allstate New Jersey Ins. Co.*, 648 F. App'x 258, 262–63 (3d Cir. 2016) (vacating dismissal with prejudice because court lacked jurisdiction to decide merits).

The Court will enter an Order consistent with this Memorandum Opinion.